739 A.2d 475

**Walter G. SCHEIPE, Appellant,**

v.

**Frank P. ORLANDO, Appellee.**

Supreme Court of Pennsylvania.

Submitted Feb. 12, 1999.

Decided Sept. 23, 1999.

Josele Cleary, Lancaster, for Walter G. Scheipe.

Stephen G. Welz, Reading, for Frank P. Orlando.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION

ZAPPALA, Justice.

This is a direct appeal from the order of the Berks County Common Pleas Court sustaining Appellee Frank Orlando's

preliminary objection in the nature of a demurrer to Appellant Walter Scheipe's *quo warranto* action challenging Orlando's appointment to the Bern Township Board of Supervisors. For the following reasons, we reverse.

On December 3, 1997, the Bern Township Board of Supervisors held a regularly scheduled public meeting. Four members of the five member board were present at the meeting.[1] During the meeting, Supervisor Kenneth Beissel submitted his letter of resignation, leaving the remaining three supervisors to continue the meeting. Thereafter, the Board accepted Beissel's resignation and by a vote of two to one, the Board appointed Orlando to serve out the remainder of Beissel's term.

Thereafter, on January 9, 1998, the Board solicitor, Timothy G. Dietrich, issued a written statement to the Board, which at the time had two new members,[2] expressing his opinion that the appointment of Orlando was improper since a majority of the *entire* board failed to vote for the appointment as required by Section 603 of the Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. § 65603. Section 603 provides:

> The board of supervisors shall meet for the transaction of business at least once each month at a time and place determined by the board of supervisors. A quorum is two members of a three-member board of supervisors or three members of a five-member board of supervisors. An affirmative vote of a majority of the entire board of supervisors at a public meeting is necessary in order to transact any business.

Based upon Dietrich's letter, the Board concluded that there remained a vacancy on the board and a "vacancy board" meeting was convened on January 12, 1998, pursuant to

---

1. Present at the meeting were Supervisors Kenneth Beissel, Lucille Brady, Richard Longlott and Milan Sokolovich. The fifth board member, Augustus Hatzas, who was not present at the meeting, was recuperating from heart surgery.

2. Supervisors George Cush and Joann Tait took office in replacement of Hatzas and Longlott.

Section 407 of the Code, 53 P.S. § 65407. Section 407 provides in relevant part:

> If ... a vacancy occurs in the office by ... resignation ... or otherwise, the board of supervisors may appoint a successor who is an elector of the township and has resided in that township continuously for at least one year prior to their appointment, and, upon their failure to make the appointment within thirty days after the vacancy occurs, the vacancy shall be filled within fifteen additional days by the vacancy board. The vacancy board shall consist of the board of supervisors and one elector of the township, who shall be appointed by the board of supervisors at the board's first meeting each calendar year or as soon after that as practical and who shall act as chairman of the vacancy board....

Voting at the meeting were Robert Jensen, the chairman, and Supervisors Brady, Tait and Cush; all four voted in favor of Supervisor Cush's nomination of Appellant Scheipe to fill the vacancy. Orlando did not participate at the meeting.

Thereafter, on April 21, 1998, Scheipe filed a complaint in *quo warranto* alleging that Orlando continued to sit as a member of the Board notwithstanding the vacancy board's action. He sought an order declaring that Orlando was not lawfully appointed to the Board and that his own appointment was proper. He further sought an order directing Orlando to cease acting as a supervisor.

Orlando filed a preliminary objection to the complaint in the nature of a demurrer, which the trial court sustained.[3] Utilizing the rules of statutory construction, the court concluded that only a majority of a quorum of the Board was needed to transact business in accordance with Section 603 of the Code. Specifically, the court noted that former Section 512 of the Code, the predecessor to Section 603, provided that "an affirmative vote of a majority of the entire board of supervisors shall be necessary in order to transact any business." The

---

**3.** Orlando also challenged Scheipe's standing to bring the *quo warranto* action. The trial court, however, denied this challenge and this ruling has not been appealed.

court concluded that Section 512 as written was ambiguous and open to two meanings, i.e., either that a majority of the entire board was necessary to transact business or a majority of a quorum was required. The court pointed out that the legislature added the phrase "at a public meeting" to Section 603 and concluded that it did so in order to clarify that a majority of a quorum is sufficient for the Board to transact business. The court noted:

> [B]y adding the words **"at a public meeting"** immediately following the words "entire board of supervisors" in Section 65603, the General Assembly has removed that ambiguity by demonstrating its intent to require the affirmative vote of only a majority of those present at a public meeting in order to transact business in a Second Class Township, assuming, of course, that there was a quorum of at least three members present. . . .

Slip op. at 8 (emphasis in original).

Appellant Scheipe argues that the trial court erred in concluding that the foregoing legislative amendment evinces a legislative intent that only a majority of those present at a public meeting are needed in order to transact business. He maintains that the clear language of the provision requires that a majority of the *entire* board is necessary to transact business, and that if read any other way the legislature's use of the term "entire board" would become surplusage. He points out that in *Stoltz v. SEPTA,* 473 Pa. 157, 373 A.2d 1096, 1099 (1977), this Court held that the legislature may draft legislation in abrogation of the common law rule that a majority of those voting, in the presence of a quorum, can act for a municipal body. We agree with Appellant that Section 603 requires a majority of the entire board to transact business.

In *Stoltz,* this Court considered a similar question to the one at issue here when we determined what construction should be given to Section 18(a) of the Metropolitan Transportation Authorities Act, 66 P.S. § 2018(a). The provision at issue provided:

> All action of the board shall be by resolution and the affirmative vote of a majority of all of the members shall be necessary for the adoption of any resolution.

When voting on several resolutions, the 11 member SEPTA board voted five yes and four no, with two abstaining and, over objection, the board declared the resolutions carried. Thereafter, several board members filed equity actions asking that SEPTA be enjoined from carrying out the challenged resolutions. SEPTA filed a declaratory judgment action seeking a declaration that the five affirmative votes out of the nine votes cast were sufficient to carry a resolution.

This Court rejected. SEPTA's claim that the language of Section 18(a) does not manifest an unmistakable legislative intent to abrogate the general common law rule that "a majority of those voting, in the presence of a quorum, can act for a board or other body." *Id.* at 1099. We stated:

> In our view, the statutory requirement that "the affirmative vote of a majority of all members shall be necessary for the adoption of any resolution" (emphasis added [in original]) reflects a clear legislative intent to abrogate the common-law rule with regard to MTAA, so that instantly a minimum of six affirmative votes was necessary to adopt the challenged resolutions. We thus agree with the majority of the Commonwealth Court that *Ross v. Miller,* 115 N.J.L. 61, 178 A. 771, 772 (1935), in which it was held that a New Jersey statute providing " '[a] majority of all the members of the municipal council shall constitute a quorum, and the affirmative vote of a majority of all the members shall be necessary to take any action or pass any measure ...' " modified the common-law rule is a more pertinent precedent than the Pennsylvania cases cited by appellants in which the common-law rule was held applicable in the absence of legislative language to the contrary.* See and compare *Putney v. Abington Twp.,* 176 Pa.Super. 463, 476, 108 A.2d 134, 140–141 (1954).

---

\* The Ross holding was despite the rule applicable in New Jersey at the time that a statute in derogation of the common law must be strictly construed. Indeed, the Ross court went on to state the con-

verse of appellants' position instantly: "We are required to assume that if the Legislature had in mind the common-law rule . . . it would have chosen appropriate and unambiguous language to express that intent." 115 N.J.L. at 64, 178 A. at 773.

*Id.* at 1100.

As in *Stoltz*, we find that the language used in Section 603 reflects a clear legislative intent to abrogate the common law rule.

We disagree with the trial court's conclusion that there existed an ambiguity in the language that appeared in former Section 512. To the contrary, the clear, unambiguous language found therein required that "an affirmative vote of a majority of the *entire* board" was needed for the Board to transact business. Thus, contrary to the trial court's further conclusion that the addition of the words "at a public meeting" to Section 603 was an attempt to clarify this language, it is clear that the legislature intended to retain the requirement found in the former act that an affirmative vote of a majority of the *entire* board is needed to transact business. The only further requirement imposed by the legislature in Section 603 is that the board transact business "at a public meeting."

Where the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). Here, because former Section 512 and current Section 603 both clearly indicate that in order to transact business an affirmative vote of the *entire* board is needed, we find that the trial court erred in concluding that only a majority of a quorum is necessary. Thus, it was error for the court to conclude that Appellee Orlando's appointment to the Board was proper since only two members of the five member Board voted for his appointment.[4]

Based on the foregoing, we reverse the order of the Berks County Common Pleas Court and remand the matter to the

4. By contrast, three supervisors and the chairman of the vacancy board voted for Appellant's appointment.

118

court and direct that a disposition, consistent with this opinion, be made.

Jurisdiction is relinquished.