841 A.2d 108

COMMONWEALTH of Pennsylvania, DEPARTMENT
OF TRANSPORTATION, Appellant

v.

Gerald S. TAYLOR, Appellee.

Supreme Court of Pennsylvania.

Re-submitted March 7, 2001.

Decided Jan. 20, 2004.

D. Michael Fisher, Calvin R. Coons, Harrisburg, for Com., Dept. of Transp., appellant.

Richard Wile, for Gerald S. Taylor, appellee.

Before CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## *OPINION*

JUSTICE CASTILLE.

The issue before this Court is whether the statutory privilege set forth in § 3754(b) of the Motor Vehicle Code, 75 Pa.C.S. § 101 *et seq.*, justified the Commonwealth of Pennsylvania, Department of Transportation (Penn DOT) in moving to quash a subpoena secured by appellee Gerald S. Taylor, which sought Penn DOT accident reports, safety studies, and accident investigations for the purpose of preparing his defense in a criminal prosecution. The courts below construed the privilege not according to its plain language, but in a narrower fashion dictated by the courts' view of the statute's alleged purpose. So construed, the courts held that the statutory privilege did not extend to the request made by Taylor. For

the reasons set forth below, we reverse the order of the Superior Court and quash the subpoena.

On May 15, 1996, appellee was driving on Ohio River Boulevard, State Route 65, in Pittsburgh when his vehicle crossed over into oncoming traffic and collided with a vehicle driven by Larry McDonald, Jr. Mr. McDonald died as a result of injuries suffered in the collision. Appellee was later charged with, *inter alia*, vehicular homicide,[1] involuntary manslaughter,[2] and driving under the influence of alcohol.[3]

In 1997, Penn DOT hired a contractor to widen the section of Ohio River Boulevard where the collision had occurred from 20 to 24 feet, and to install a concrete barrier between the opposing lanes of traffic. Appellee retained an expert to determine whether the post-accident improvements suggested a pre-existing defect in the design of the roadway which might lessen appellee's culpability in McDonald's death. The expert reported that he could not form an opinion about whether the design of the road contributed to the collision without reviewing the construction and design records of the relevant portion of the roadway. Appellee requested that Penn DOT, a nonparty in his pending criminal matter, produce its construction and design records both pre-dating and post-dating the accident, as well as records, accident studies and reports of sixteen traffic accidents that had occurred at that location in 1995 and 1996.

Penn DOT delivered its engineering studies but declined to provide its reports on other accidents at the location, invoking the privilege set forth in § 3754(b) of the Motor Vehicle Code, which provides:

> **(b) Confidentiality of reports.**—In-depth accident investigations and safety studies and information, records and reports used in their preparation shall not be discoverable nor admissible as evidence in any legal action or other proceeding, nor shall officers or employees or the agencies

1. 75 Pa.C.S. § 3732.
2. 18 Pa.C.S. § 2504.
3. 75 Pa.C.S. § 3731.

charged with the development, procurement or custody of in-depth accident investigations and safety study records and reports be required to give depositions or evidence pertaining to anything contained in such in-depth accident investigations or safety study records or reports in any legal action or other proceeding.

*Id.* Appellee then petitioned the trial court to issue a subpoena *duces tecum* directing Penn DOT to produce the very items that are covered by § 3754(b):

Reports submitted to the Department of Transportation pursuant, [sic] to 75 Pa.C.S. § 3754(a), pertaining to motor vehicle accidents that occurred during 1995 and 1996 on segments 20 through 30 and 21 through 31 of Ohio River Boulevard, State Route 65, which reports were used in the preparation of an "in-depth" accident investigation and/or safety study, within the meaning of 75 Pa.C.S. § 3754(b). Accident investigations and/or safety studies prepared, conducted and/or performed by or for the Department of Transportation with respect to segments 20 through 30 and 21 through 31 of Ohio River Boulevard, State Route 65, preparatory to the award of Department of Transportation contract no. 111492, which investigations and/or accident studies were "in-depth" within the meaning of 75 Pa.C.S. § 3754(b).

Penn DOT moved to quash the subpoena, arguing that the documents requested by appellee were privileged and not discoverable in light of § 3754(b).

On March 9, 1998, the trial court granted appellee's request for the subpoena and denied Penn DOT's motion to quash. The trial court stayed its order, however, and certified the question of the applicability of the statutory privilege for interlocutory appeal, pursuant to 42 Pa.C.S. § 702(b), since it was a controlling question of law as to which there was a substantial ground for difference of opinion. On the merits, the court explained its reasoning in a subsequent opinion. The court recognized that the statute "plainly and unambiguously prohibits both the discoverability and admission of such information in any proceeding." Slip op. at 3. Nevertheless,

the court concluded that, "[t]he Commonwealth's interest in protecting its financial and administrative records cannot rise to the level of protection afforded citizens when the liberty of a criminal defendant is at stake in evidentiary matters." *Id.* at 4. The court resolved the conflict it perceived between the statute's plain language and a criminal defendant's liberty interest by construing the privilege as not applying in this instance.

On appeal, an *en banc* panel of the Superior Court held that the § 3754(b) privilege had to be deemed limited by the purpose of the statute suggested by § 3754(a)[4] which, the court concluded, was "to effect a safe and efficient system of motor vehicle transportation in Pennsylvania by providing its officers and employees with an unbiased, honest, and accurate body of information regarding motor vehicle accidents." *Commonwealth v. Taylor*, 746 A.2d 626, 631 (Pa.Super.2000) (*en banc*). The court found that disclosure of the records sought by appellee for purposes of his criminal defense would not interfere with that purpose. Because it viewed the dispute as involving a question of statutory construction and then found the privilege inapplicable in light of the limiting construction it derived from its conclusion as to the alleged legislative purpose of the statute, the Superior Court did not consider appellee's alternative argument that a determination that the materials were privileged would deny his due process right of access to exculpatory information.[5]

4. Section 3754(a) provides:
   (a) **General rule.**—The department, in association with the Pennsylvania State Police, may conduct in-depth accident investigations and safety studies of the human, vehicle and environmental aspects of traffic accidents for the purpose of determining the causes of traffic accidents and the improvements which may help prevent similar types of accidents or increase the overall safety of roadways and bridges.

5. Judge Del Sole (now President Judge) filed a Concurring and Dissenting Opinion, joined by Judge Orie Melvin, in which he opined that the subpoena should only allow appellee to obtain factual information in Penn DOT's files and not information implicating Penn DOT's "in-house" opinions.

Penn DOT responds that the plain language of the statute, which provides that accident investigations, reports and safety studies are not discoverable or admissible "in any legal action or other proceeding," makes clear that the documents sought by appellee were shielded and not discoverable. Penn DOT argues that the courts below were not free to ignore that plain language and essentially rewrite the statute to better serve what the Superior Court viewed as the statute's purpose. Proceeding to the constitutional question avoided by Superior Court's construction of the statute, Penn DOT argues that, under this Court's precedents, the statute is constitutional.

In response, appellee concedes the principle that, where the words of a statute are clear and free from all ambiguity, the words cannot be disregarded under the pretext of pursuing the supposed spirit of the legislation. Appellee argues, however, that principle is inapplicable here because § 3754(b) does not "explicitly state" that it applies in criminal cases. Appellee argues that, as an evidentiary privilege, § 3754(b) should be narrowly construed. Appellee further contends that, if the statute is deemed to shield the information he requested, it violates his due process right since it would deprive him of access to material in the possession of a governmental third party that might advance his criminal defense. Appellee argues that his interest in obtaining evidence that might help his criminal defense sufficiently outweighs the interest served by the privilege that, for the statute to withstand constitutional scrutiny, it must be construed as permitting disclosure here.

The primary question for review involves the proper interpretation of a statute. This is a pure question of law and, as such, our review is plenary. *See C.B. ex rel. R.R.M. v. Commonwealth, Department of Public Welfare,* 567 Pa. 141, 786 A.2d 176, 180 (2001).

As a general rule courts do not have the power to ignore clear and unambiguous statutory language in pursuit of a statute's alleged or perceived purpose. The Statutory Construction Act directs that, in construing statutory language, "[w]ords and phrases shall be construed according to rules of

grammar and according to their common and approved usage." 1 Pa.C.S. § 1903. The Act further provides that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); *see also Scheipe v. Orlando,* 559 Pa. 112, 739 A.2d 475, 478 (1999). Under § 1921(c), it is only when the words of a statute "are not explicit" that a court may resort to other considerations, such as the statute's perceived "purpose," in order to ascertain legislative intent:

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

*Id.* Consistently with the Act, this Court has repeatedly recognized that rules of construction, such as consideration of a statute's perceived "object" or "purpose," are to be resorted to only when there is an ambiguity. *O'Rourke v. Commonwealth, Dep't of Corrections,* 566 Pa. 161, 778 A.2d 1194, 1201 (2001) (citing *In re Kritz' Estate,* 387 Pa. 223, 127 A.2d 720, 723 (1956)); *Ramich v.WCAB (Schatz Electric, Inc.),* 564 Pa.656, 770 A.2d 318, 322 (2001) ("Only when the language of the statute is ambiguous does statutory construction become necessary.") (citing 1 Pa.C.S. § 1921(c)); *Oberneder v. Link Computer Corp.,* 548 Pa. 201, 696 A.2d 148, 150 (1997); *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87 (1995) ("Where the

words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words.").

Section 3754(b) mandates, in explicit and unambiguous terms, that "[i]n-depth accident investigations and safety studies and information, records and reports used in their preparation shall not be discoverable nor admissible as evidence in any legal action or other proceeding." 75 Pa.C.S. § 3754(b). The statute provides for no exceptions. It further mandates that employees of agencies, such as Penn DOT here, which are charged with the development or procurement of such studies or reports, shall not be required to give depositions or evidence pertaining to anything contained in them. *Id.* Contrary to appellee's argument, the fact that the statute does not "explicitly state" that it applies to criminal cases does not clothe the statute in ambiguity. The statute speaks in the broadest of terms, stating that it applies in **any legal action or other proceeding;** such global language obviously encompasses criminal proceedings no less than civil proceedings. There is no ambiguity. In the apparent interest of maintaining confidentiality, the statute prohibits the discovery of in-depth accident investigations and safety studies and information as well as records and reports used in their preparation— the very items requested by appellee. By the clear terms of § 3754(b), appellee is not entitled to subpoena these materials. To allow discovery of these accident reports and studies in collateral matters would directly counter the statutory mandate of promoting a safe and efficient highway system by providing Penn DOT with unbiased and accurate information unfettered by involving Penn DOT employees and consultants in collateral legal actions or other proceedings of any type. Such restriction is an appropriate manner designed to achieve important governmental objectives: a safe and efficient highway system in Pennsylvania.

In addition to the fact that the narrow construction adopted by the Superior Court construing § 3754(b) as not applying to criminal matters is belied by the actual terms of the provision, we note that the General Assembly is well aware of how to provide for such exceptions in statutes defining evidentiary

privileges. *See, e.g.,* 42 Pa.C.S. § 5913 ("a person shall have the privilege . . . not to testify against his or her then lawful spouse except that there shall be no such privilege: . . . (2) in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the other . . . or any minor child in their care or custody . . ."); *see also, e.g.,* 23 Pa.C.S. § 6381(c) ("a privilege of confidential communication between husband and wife or between any professional person . . . shall not constitute grounds for excluding evidence at any proceeding regarding child abuse or the cause of child abuse"). Thus, even if resort to statutory construction were appropriate, there is no compelling reason to import the non-textual exception pertaining to criminal matters read into § 3754(b) by the Superior Court.

Nor is there anything absurd or unreasonable in following a plain language construction of § 3754(b). *See* 1 Pa.C.S. § 1922(1) (fundamental presumption in "ascertaining the intention of the General Assembly in the enactment of a statute" is that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable"). Privileges of the sort at issue here are not at all uncommon. *See* L. Packel & A. Poulin, *Pennsylvania Evidence,* (2d ed. 1999), § 533, at 440 n. 7 (collecting examples). The General Assembly has apparently determined that, as in other instances of privilege, there is some value in ensuring the confidentiality of Penn DOT's work product in this area. Absent a valid constitutional objection, an issue which we will address separately below, it is not our role to second-guess that legislative judgment.

In explaining its narrow construction of § 3754(b), the Superior Court relied upon *Commonwealth v. Stewart,* 547 Pa. 277, 690 A.2d 195 (1997), for the proposition that evidentiary privileges "are held in disfavor and may be applied only for limited purposes under closely circumscribed conditions." 746 A.2d at 629. *Stewart* indeed recognized the salutary principle that, " 'exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.' " *Id., quoting Hutchison*

*v. Luddy*, 414 Pa.Super. 138, 606 A.2d 905, 908 (1992). Of course, we will not assume that the General Assembly "lightly created" this privilege. Moreover, a holding that the privilege extends to the documents requested here does not involve an "expansive construction" of § 3754(b): It is the only reasonable construction given that the documents requested in the subpoena here tracked the exact materials specified in the privilege.

Furthermore, it is important to note what was actually at issue and decided in *Stewart*. *Stewart* involved the statutory clergy-communicant privilege, which provides that:

No clergyman, priest, rabbi or minister of the gospel of any regularly established church or religious organization ... who while in the course of his duties has acquired information from any person secretly and in confidence shall be compelled, or allowed without consent of such person, to disclose that information in any legal proceeding, trial or investigation before any government unit.

42 Pa.C.S. § 5943. The scope of the privilege set forth in the clergy-communicant statute is not self-effectuating; construction was obviously required to determine what qualified as secret, confidential information acquired by a clergyman "in the course of his duties." In construing that language, this Court employed the approach followed in "nearly every jurisdiction in the United States" which has such a privilege, and held that the communication has to have been made to the clergyman "in his or her capacity as confessor or spiritual advisor." 690 A.2d at 198–99, 200. Significantly, in so holding, we emphasized that "limiting the privilege to communications penitential or spiritual in nature does not 'insert' nonexistent language into the statute. Instead, this requirement provides a rational and well-established interpretation of confidential information acquired 'in the course of [a clergyman's] duties.'" *Id.* at 200.

*Stewart*, thus, does not suggest that privilege statutes may or should be rewritten to accomplish a perceived purpose that is at odds with their plain language. Rather, it stands for the more limited proposition that, in cases where the plain terms

of the statute establishing the privilege are not self-effectuating and require construction, it is appropriate to construe the privilege consistent with well-established precepts in that specific area. In this case, as demonstrated above, the provision at issue specifically details the materials it encompasses: no construction is required to effectuate the restriction. The statute also specifies that the privilege obtains "in any legal action or other proceeding." The statute plainly applies to appellee's request, a request which tracked the very language of the statute.

We are aware that the Superior Court's analysis was powered, at least in part, by a concern with avoiding the contingent constitutional question appellee raised. We are equally cognizant of the restraining principle that counsels against reaching a constitutional question if a non-constitutional ground for decision is available. *See, e.g., P.J.S. v. Pennsylvania State Ethics Commission*, 555 Pa. 149, 723 A.2d 174, 176 (1999). But that principle cannot warrant ignoring the plain language of an unambiguous statute, or construing it as posing an ambiguity where there in fact is none.

Since we have determined that the courts below erred in their construction of the statute, and that the confidentiality privilege applies to appellee's request, we must turn to appellee's alternative argument that, if the privilege would shield Penn DOT's records, then it violates due process under both the federal and Pennsylvania Constitutions.[6] Given their

6. *See* U.S. Const. amend XIV, § 1; PA Const. Art. 1, § 9. Appellee argues his state and federal due process claims in unitary fashion, *i.e.*, he does not claim that the Pennsylvania charter provides more extensive protection. We note that this Court has generally treated the provisions as coextensive. *See Commonwealth v. Kratsas*, 564 Pa. 36, 764 A.2d 20, 27 n. 5 (2001); *Commonwealth v. Snyder*, 552 Pa. 44, 713 A.2d 596, 600 (1998). Appellee notes that his claim to an entitlement to Penn DOT's work product arguably might flow from the compulsory process clause of the Sixth Amendment, but then correctly notes that, in this area of law, the compulsory process clause affords no greater protection than the due process clause. *See* Appellee's Brief at 8 n. 2. *See also Pennsylvania v. Ritchie*, 480 U.S. 39, 56, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987); *Commonwealth v. Wilson*, 529 Pa. 268, 602 A.2d 1290, 1296–97 (1992) (plurality), *cert. denied*, 504 U.S. 977, 112 S.Ct. 2952, 119 L.Ed.2d 574 (1992).

construction of § 3754(b), neither of the courts below passed on this argument. Although we could remand the matter for the Superior Court's consideration in the first instance, since the parties have ably briefed the question, and since remand would further delay the matter, we think it better to resolve the question ourselves.

Appellee submits that the due process clause provides a criminal defendant with a right to discover evidence that would tend to establish the defendant's innocence, and creates a duty in the Commonwealth to disclose such evidence. He claims that Penn DOT's "in-depth" accident reports and safety studies might contain material, exculpatory evidence that would lessen his culpability. He also argues that his due process right to access possibly exculpatory evidence in Penn DOT's possession outweighs Penn DOT's interest in keeping the documents confidential and thereby negates the statutory privilege. In support of this weighing argument, appellee argues that this Court has held that statutory privileges cannot be applied to bar disclosure of evidence that would help a jury to make a determination of guilt or innocence. *See* Appellee's Brief at 9–10 (citing *Commonwealth v. Spiewak*, 533 Pa. 1, 617 A.2d 696 (1992)). Appellee also argues that the fact that this Court has upheld other statutory privileges does not mean that all such privileges "necessarily trump defendants' due process rights to the production of exculpatory evidence." *Id.* at 11, 617 A.2d 696. Additionally, appellee attempts to distinguish the case *sub judice* from cases where statutory privileges have been upheld by arguing that those statutory privileges involved constitutionally-based public interests in privacy, whereas this case involves what appellee terms Penn DOT's "narrow bureaucratic interest." *See id.* at 10–14, 617 A.2d 696 (citing *Commonwealth v. Counterman*, 553 Pa. 370, 719 A.2d 284 (1998), *cert. denied* 528 U.S. 836, 120 S.Ct. 97, 145 L.Ed.2d 82 (1999); *Commonwealth v. Wilson*, 529 Pa. 268, 602 A.2d 1290 (1992) (plurality), *cert. denied* 504 U.S. 977, 112 S.Ct. 2952, 119 L.Ed.2d 574 (1992)).

Penn DOT responds that there is no legitimate constitutional impediment to enforcing the statutory privilege in this

criminal case. Penn DOT notes that both the United States Supreme Court and this Court have concluded that absolute statutory privileges, as distinct from common law privileges or non-absolute statutory privileges, do not violate a defendant's due process rights. *See* Appellant's Brief at 17–19 (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) and *Commonwealth v. Wilson, supra*). Penn DOT argues that, in creating an absolute statutory privilege, the General Assembly obviously concluded that there is a compelling reason to shield safety studies and accident reports generated by Penn DOT from disclosure. Moreover, the very language of the privilege demonstrates that the interest which the General Assembly is protecting is not merely administrative or financial—themselves appropriate governmental concerns—but also includes the public interest in safe highways. *See id.* at 21 (quoting 75 Pa.C.S. § 3754(a) ("The Department ... may conduct in-depth accident investigations and safety studies ... for the purposes of determining the causes of traffic accidents and the improvements which may help prevent similar types of accidents or increase the overall safety of roadways and bridges.")). Penn DOT further argues that appellee's reliance on *Spiewak* is misplaced because the issue in *Spiewak* was the trial right of a defendant to confront and effectively cross-examine an actual witness against him. This case, in contrast, does not involve an attempt to insulate an adverse witness.

Preliminarily, we note that we are not at all persuaded by appellee's argument that we should view this particular statutory privilege as having less value than others. The General Assembly created what appears to be a narrow but absolute privilege in this area, by requiring that the documents at issue "shall not be discoverable nor admissible as evidence in **any** legal action or other proceeding." 75 Pa.C.S. § 3754(b) (emphasis added). "The enactment of an absolute privilege indicates the Commonwealth's compelling interest in protecting the confidentiality of the ... records." *Commonwealth v. Wilson*, 602 A.2d at 1297 (construing sexual assault counselor

privilege).[7]  *Contrast, Pennsylvania v. Ritchie,* 480 U.S. at 57–58, 107 S.Ct. 989 (noting that statutory privilege there, covering reports of child abuse, was not absolute because statute provided for disclosure in certain limited circumstances; since interest in confidentiality could not be deemed compelling under such a statute, due process required disclosure).  It is the General Assembly's prerogative to assess and balance relative values.  For our purposes, the very existence of the unambiguous and absolute legislation proves the legitimacy of the privilege.[8]  The General Assembly obviously has determined that Penn DOT can better serve its function, and better ensure the safety of Commonwealth roadways and the lives of its citizens, if the department is shielded from having its internal studies and work product in this area subject to collateral discovery and litigation.

Furthermore, the very nature of the material covered by the § 3754(b) privilege weighs against appellee's due process claim.  In this regard, the privilege is less problematic than the statutory privileges that were upheld against similar due process/ compulsory process challenges in *Wilson* and *Counterman.*  In *Wilson,* this Court held that the newly enacted statutory sexual assault counselor privilege, *see* 42 Pa.C.S. § 5945.1(b), barred criminal defendants, who were charged with rape, from access to their victims' files maintained by local rape crisis centers.  In *Counterman,* this Court upheld the statutory psychiatrist/psychologist-patient privilege, *see* 42

---

7.  Former Chief Justice Nix's plurality opinion in *Wilson* was joined by Justices Flaherty and Cappy;  Justice Larsen filed a concurring opinion joined by Justice Papadakos;  Justice Zappala dissented;  and Justice McDermott did not participate.  The concurring opinion agreed with the lead opinion that the statutory sexual assault counselor privilege was absolute.

8.  In any event, it is not difficult to imagine why the General Assembly concluded that there was a compelling reason to maintain the confidentiality of these studies, investigations, and reports.  The Assembly could have concluded that any disclosure would act as a deterrent to the sort of candid and open investigation and discussion required to make Pennsylvania highways safer.  Although the Superior Court in this case would have limited disclosure to criminal prosecutions, many of these incidents also lead to civil suits where Penn DOT may be a defendant. Indeed, it appears that the victim of this case has brought such a suit against Penn DOT.

Pa.C.S. § 5944, against a similar constitutional challenge, noting "the clear mandate of the statutory privilege" and that the privilege "is not outweighed by either a defendant's Sixth Amendment right to cross-examine a witness or his right to due process of law." 719 A.2d at 295. In both of these cases, the files at issue may have provided helpful fodder for cross-examination (such as prior inconsistent statements) of the most important witness against the defendant—the victim. Nevertheless, as a result of the clear statutory privileges, the defendants in those cases were denied access to information from the mouths of the victims themselves, information which may have aided in their defense.

Here, in contrast to both *Wilson* and *Counterman,* the privileged records do not involve communications from the victim of the crime charged (he is dead); nor do they necessarily even involve reports from eyewitnesses relevant to the incident giving rise to appellee's criminal prosecution. Rather, the records apparently are generated in the course of Penn DOT's business, and involve Penn DOT's own third party investigations into this and other traffic accidents and collisions.

█ Along a similar vein, we note that it is not even clear that any theoretically relevant information generated by Penn DOT, which lacks first-hand knowledge of the incident, was otherwise unavailable to appellee through his own diligent investigation. Appellee, of course, was free to conduct his own investigation of other accidents at or near the site of this collision by contacting the relevant police department(s) or other sources, requesting copies of accident reports, seeking out and interviewing those involved in those accidents, etc. Appellee could then present the results of such a factual investigation to his own expert or experts in an attempt to secure helpful opinion evidence. In fact, appellee did hire an expert who testified that he could not form an opinion regarding whether the design of the roadway contributed to the collision without access to the construction and design records. But Penn DOT apparently disclosed those particular records. Requiring Penn DOT to disclose its internal accident studies,

investigations, and reports would essentially convert the department into appellee's personal, but publicly-funded, investigator and additional expert. Nothing in the due process clause requires such a result.[9] Accordingly, we hold that application of the privilege here does not violate due process of law.

For the foregoing reasons, we hold that the Penn DOT documents that were the subject of appellee's request for a subpoena were privileged under § 3754(b) of the Motor Vehicle Code and that the statute, so applied, is not unconstitution-

9. Appellee also suggests that he is entitled to subpoena Penn DOT's files under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *See* Appellee's Brief at 7. This claim is meritless. Even if it is assumed for the sake of argument that Penn DOT should be deemed the "prosecution" for *Brady* purposes, as Penn DOT notes, appellant's argument was rejected by the U.S. Supreme Court in *Pennsylvania v. Ritchie:*

A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files.... Although the eye of an advocate may be helpful to a defendant in ferreting out information ..., this Court has never held—even in the absence of a statute restricting disclosure—that a defendant alone may make the determination as to the materiality of the information. Settled practice is to the contrary. In the typical case where a defendant makes only a general request for exculpatory material under [*Brady*,] it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance. *See Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one").

480 U.S. at 59–60, 107 S.Ct. 989 (additional citations and footnote omitted).

Finally, we note that appellee's reliance upon *Spiewak* is misplaced. *Spiewak* did not involve an alleged right to pre-trial disclosure of information otherwise privileged by statute, but rather the *trial* right to cross-examine and confront a witness with her relevant prior testimony at another court proceeding in the face of the Rape Shield Law, 18 P.S. § 3104(a), a statute purporting to regulate the admissibility of evidence at trial. Consistently with our previous decision in *Commonwealth v. Majorana*, 503 Pa. 602, 470 A.2d 80 (1983), the *Spiewak* Court merely held that the protection afforded a complainant by the Rape Shield Law (against admission of evidence of instances of her alleged past sexual conduct) could not act to exclude relevant evidence of that nature which might exculpate the defendant.

al. The order of the Superior Court is reversed and the subpoena is quashed.

Justice NIGRO files a dissenting opinion in which Chief Justice CAPPY joins.

Justice BAER did not participate in the consideration or decision of this matter.

JUSTICE NIGRO DISSENTING.

As I would hold that the statutory privilege set forth in 75 Pa.C.S. § 3754(b) does not prevent Appellee from compelling PennDOT to disclose to him the underlying facts and data within its accident investigations and safety studies for the purpose of preparing his criminal defense, I must respectfully dissent.

It is well established that evidentiary privileges, such as the privilege asserted by PennDOT in the instant case, are generally disfavored and should be narrowly construed. *See Commonwealth v. Stewart*, 547 Pa. 277, 690 A.2d 195, 197 (1997) (courts should accept privileges "only to the very limited extent that ... excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth") (internal quotation marks omitted). If the purpose for which a privilege was created is limited, the privilege applies only to the extent that it effectuates its purpose. *See id.* at 198–200.

As the majority notes, the primary question here involves the proper interpretation of 75 Pa.C.S. § 3754(b). In general, in interpreting statutes, we must attempt to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a); *see O'Rourke v. Commonwealth, Dep't of Corrections*, 566 Pa. 161, 778 A.2d 1194, 1201 (2001). Where the words of the statute are clear and free from ambiguity, we must glean that legislative intent from the words of the statute. *See* 1 Pa.C.S. § 1921(b). However, we must also read the statute, if possible, to give effect to all of its provisions. *Id.* § 1921(a). Therefore, in accomplishing our goal of ascertaining legislative intent, we do not interpret the words of a statute in isolation

from each other, but rather, in the context in which they appear. *See O'Rourke,* 778 A.2d at 1201. Thus, when parts of statutes relate to the same persons or things, or the same class of persons or things, they are *in pari materia* and are to be construed together. 1 Pa.C.S. § 1932; *see Salazar v. Allstate Ins. Co.,* 549 Pa. 658, 702 A.2d 1038, 1041 (1997).

Section 3754 contains two subsections, both of which specifically refer to "in-depth accident investigations and safety studies." *See* 75 Pa.C.S. § 3754(a), (b); slip op. at 4 n. 4 (quoting *id.* § 3754(a)), slip op. at 2–3 (quoting *id.* § 3754(b)). Subsection (a) empowers PennDOT to conduct accident investigations and safety studies "for the purpose of determining the causes of traffic accidents and the improvements which may help prevent similar ... accidents or increase the overall safety of roadways and bridges." 75 Pa.C.S. § 3754(a). Subsection (b) limits the involvement of PennDOT in civil litigation over those investigations and studies and allows Penn-DOT to obtain candid information without fear of potential financial liability. *See* 75 Pa.C.S. § 3754(b).[1] Accordingly, because both subsections relate to PennDOT's authority to conduct accident investigations and safety studies, they are *in pari materia* and must be construed together. *See* 1 Pa.C.S. § 1932; *Hamilton v. Unionville–Chadds Ford Sch. Dist.,* 552 Pa. 245, 714 A.2d 1012, 1015 (1998) (middle school discipline code and discipline section of school district's student code were *in pari materia* because both applied to same subject matter, even though they did not apply to the same class of persons); *Rosen v. Bureau of Prof'l & Occupational Affairs, State Architects Licensure Bd.,* 763 A.2d 962, 965–66 (Pa. Commw.Ct.2000) (Architects Licensure Law and the Engineer, Land Surveyor and Geologist Registration Law should be read *in pari materia* because the primary purpose of both statutes is the same).

1. In light of the plain language of subsection (a), I, unlike the majority, do not believe that subsection (b) is clear and free from ambiguity as it relates to whether the privilege at issue here is absolute and applies to criminal prosecutions as well as civil proceedings.

In reading subsections (a) and (b) together, it is clear that the privilege set forth in subsection (b) relates to the purpose set forth in subsection (a), which is to improve traffic safety by empowering PennDOT to conduct investigations and safety studies. In other words, the protections created by subsection (b) exist to serve the purposes enunciated in subsection (a). Given this statutory construct, I agree with the Superior Court that the privilege set forth in subsection (b) is limited and may be given effect only to the extent necessary to further the purpose of allowing PennDOT to obtain accurate and honest information in its efforts to increase traffic safety without fear of incurring civil liability.[2] *See Stewart,* 690 A.2d at 197 (evidentiary privileges should be applied only to the extent that they satisfy the public good). It is absolutely clear, at least in my view, that withholding facts and data from Appellee for use in the preparation of his defense against the criminal charges lodged against him does nothing to improve traffic safety. Thus, I disagree with the majority that the privilege at issue here is absolute and wholly protects Penn-DOT from disclosing all of the information Appellee seeks.

Like the trial court, however, I would restrict Appellee's access to the information and limit its use "only for purposes connected with the preparation and presentation of the defense" of the criminal charges against Appellee. Trial Ct. Order, 3/9/98, at 2. I would also limit PennDOT's disclosure to facts and data, and exclude all non-factual material from discovery. As now-President Judge Del Sole reasoned in his concurring and dissenting opinion below, facts and data gathered in accident investigations and safety studies do not, in and of themselves, subject PennDOT to the burdens of civil litigation. Rather, it is the opinions and conclusions formed by its employees and experts in reliance on those facts and data that expose PennDOT to potential civil liability, and therefore, it is those opinions and conclusions, rather than the

---

2. This interpretation of the statute's purpose does not, as PennDOT alleges and the majority suggests, disregard the plain language of the statute. Rather, this interpretation stems directly from the very language of subsection (a). *See* 75 Pa.C.S. § 3754(a).

facts and data themselves, that must be protected from disclosure.[3]

PennDOT argues, however, that any disclosure, including a limited disclosure such as the one I would permit in the instant case, would have a chilling effect on PennDOT's ability to obtain candid and accurate information. This fear is simply unfounded. While I recognize the importance of allowing PennDOT to obtain such information without fear of liability, disclosing facts and data to Appellee for the sole purpose of defending his fundamental liberty interests would not in any way affect PennDOT's ability to obtain information.[4]

Accordingly, I would vacate the order of the Superior Court and remand this matter to the trial court for an *in camera* review of PennDOT's accident investigations and safety studies to determine the facts and data from these materials that must be disclosed to Appellee for the purpose of preparing and presenting his criminal defense.

Chief Justice CAPPY joins.

**3.** Such disclosure would not "convert [PennDOT] into [A]ppellee's personal, but publicly-funded investigator, and additional expert," as the majority states. Slip op. at 15. Rather, it would give Appellee's expert access to certain facts that Appellee would not be able to obtain otherwise, even with his own diligent investigation.

**4.** I find PennDOT's concern here a bit curious, given that it has already disclosed the construction and design records for the 1997 road improvements to Appellee. PennDOT fails to explain how allowing Appellee access to those records would not have the same chilling effect that it claims *any* disclosure of material within accident investigations and safety studies would cause.