**Christopher A. CAVALLINI, Appellee,**

v.

**PET CITY AND SUPPLY Corrected to PET CITY AND SUPPLIES, INC., Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 2004.

Filed April 26, 2004.

Gregory T. Moro, Bloomsburg, for appellant.

Thomas E. Leipold, Bloomsburg, for appellee.

Before: DEL SOLE, P.J., JOYCE and KLEIN, JJ.

OPINION BY DEL SOLE, P.J.:

¶ 1 Appellant, Pet City and Supplies, Inc. ("Pet City"), appeals from the judgment in the amount of $1,638.52 entered in favor of Appellee, Christopher A. Cavallini ("Cavallini"), following a bench trial. The trial court determined that Cavallini was entitled to damages due to Pet City's violations of the Dog Purchaser Protection provisions of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL" or "the Law").

¶ 2 The UTPCPL, 73 P.S. § 201 et seq., was amended in 1997 to include the Dog Purchaser Protection provisions ("Dog provisions") set forth at 73 P.S. § 201–9.3. The Dog provisions mandate that sellers supply certain information to buyers of dogs. In particular, if a dog is represented to be registered or registerable, the seller must provide the name and address of the breeder and information relating to the dam and sire of the dog's litter. 73 P.S. § 201–9.3(f)(1). Except under certain circumstances that do not exist in this case, all documentation necessary to effect the registration of the dog must be furnished by the seller within one hundred twenty days of the sale. 73 P.S. § 201–9.3(f)(2). A seller's failure to provide the required information affords the buyer a choice of two remedies: return the dog for a refund of the full purchase price, not including sales tax; or retain the dog and receive a refund in an amount equal to fifty per cent of the purchase price. 73 P.S. § 201–9.3(f)(3).

¶ 3 On July 24, 1999, Cavallini purchased a Yorkshire terrier puppy from Pet City. It was represented to Cavallini that the dog was pure bred. The sales documents reflect a purchase price of $400.00, plus sales tax of $24.00. Within approximately one week of the purchase, Pet City provided information to Cavallini listing the vaccinations already given to the dog and setting forth the name and AKC registration numbers for its sire and dam.

¶ 4 Cavallini contacted Pet City, requesting additional documentation required for the dog's registration. Shortly after the expiration of the one-hundred-twenty-day period following the purchase, Cavallini again visited Pet City, seeking that additional information, but to no avail.

¶ 5 Cavallini filed a complaint with the Bureau of Consumer Protection of the Office of the Attorney General. By letter dated May 30, 2000, the Bureau informed Cavallini that the attempts to mediate a resolution to Cavallini's complaint had been unsuccessful. The agent advised Cavallini that he may have a valid court claim, but noted only a court could determine what rights he might have and whether he is entitled to any remedies. The agent suggested that Cavallini consult with an attorney or a local district justice, and noted that district justice and small claims court proceedings can be informal and inexpensive.

¶ 6 Cavallini proceeded to file a district justice complaint, which ultimately resulted in the entry of a default judgment in Cavallini's favor in the amount of $739.88 plus costs in the amount of $57.50. Pet City filed an appeal to the Court of Common Pleas.

¶ 7 In his *pro se* complaint, Cavallini claimed that Pet City did not comply with the UTPCPL and demanded judgment in the amount of $797.38. Following the

·grant of Pet City's preliminary objections, an amended complaint was filed by counsel retained by Cavallini. The amended complaint included three counts: breach · of contract, common law fraud and a claim under the Dog provisions of the UTPCPL.

¶ 8 The case proceeded to arbitration pursuant to Pa.R.C.P. 1301 et seq. Following a hearing, the arbitrators found in favor of Cavallini.

¶ 9 Pet City again appealed. During the subsequent non-jury trial, Cavallini abandoned his breach of contract and common law fraud claims and presented evidence and argument solely on the UTPCPL claim. On December 23, 2002, the trial court issued its opinion and order, awarding Cavallini $200.00 as one-half of the purchase price, plus a civil penalty in the amount of $500.00, and counsel fees in the amount of $938.52. Judgment was entered in favor of Cavallini in the amount of $1,638.52.

¶ 10 Pet City raises two issues on appeal: first, whether the trial court erred as a matter of law by determining a private action can be brought under the Dog provisions of the UTPCPL; and second, whether the trial court erred as a matter of law by imposing a civil penalty against Pet City pursuant to 73 P.S. § 201–9.3(h)(2).

■ ¶ 11 We begin our analysis by setting forth the applicable scope and standard of review. "Concerning any questions of law, our scope of review is plenary." *Van Zandt v. Holy Redeemer Hospital,* 806 A.2d 879, 886 (Pa.Super.2002). "When examining a trial court's conclusions in a non-jury trial, our standard of review is well settled: 'we [may] reverse the trial court only if its findings of fact are predicated on an error of. law or are unsupported by competent evidence in the record.'" *Skurnowicz v. Lucci,* 798 A.2d 788, 793 (Pa.Super.2002) (quoting *Wallace v. Pastore,* 742 A.2d 1090, 1092 (Pa.Super.1999)).

■ ¶ 12 Mindful of the scope and standard of our review, we turn our focus to the UTPCPL. "The UTPCPL must be liberally construed to effect the law's purpose of protecting consumers from unfair or deceptive business practices." *Wallace v. Pastore,* 742 A.2d 1090, 1093 (Pa.Super.1999) (citing *Commonwealth v. Monumental Properties, Inc.,* 459 Pa. 450, 329 A.2d 812 (1974)).

¶ 13 The general provisions of the UTPCPL provide for two types of remedies. Under 73 P.S. § 201–9.2, private actions are authorized for consumers who suffer a loss due to certain unlawful practices as defined in the UTPCPL. In addition, the UTPCPL provides a statutory scheme by which the Commonwealth, through the Attorney General or a District Attorney, may initiate proceedings to enforce the Law. 73 P.S. §§ 201–4 and 201–5. These proceedings may culminate in the imposition of civil penalties. 73 P.S. § 201–8.

■ ¶ 14 The Dog provisions also contain two types of remedies. First, there are specific remedies which correspond with the type of violation that occurred: in this case, the refund of half of the purchase price as outlined in 73 P.S. § 201–9.3(f)(3)(ii). Additionally, the provisions allow for the imposition of civil penalties as outlined in 73 P.S. § 201–9.3(h).

¶ 15 Pet City contends that the language of 73 P.S. § 201–9.3(h) is not limited to the imposition of civil penalties, but in fact mandates the conclusion that there is no private action under the Dog provisions.

¶ 16 73 P.S. § 201–9.3(h) provides as follows:

(1) The Office of Attorney General shall enforce the provisions of this section.

(2) In addition to any other penalty under this act, a civil penalty of up to one thousand dollars ($ 1,000) on any current licensee shall be levied against any person who violates any provision of this section or any person who conducts business under this section without proper license to do so. A penalty shall be levied for each violation.

(3) A purchaser shall file a complaint pursuant to this section by reporting it to the Bureau of Consumer Protection of the Office of Attorney General.

¶ 17 We note the language of 73 P.S. § 203–9.3(h)(1) limits the enforcement of this "section" to the realm of the Attorney General's office and we acknowledge Pet City's argument concerning statutory construction and the plain language of the statute.[1] But, charged with the duty to liberally construe the language of the UTPCPL in order to protect consumers from business practices which violate the Law, we find the purpose of the UTPCPL is better served by utilizing an alternative principle of statutory construction and construing the different parts of the statute in *pari materia.*

¶ 18 This rule, found at 1 Pa.C.S.A. § 1932, provides as follows:

(a) Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things.

(b) Statutes in pari materia shall be construed together, if possible, as one statute.

¶ 19 We find the legislature did not intend to create an inconsistency between the provisions of 73 P.S. §§ 201–9.2 and 201–9.3 concerning the rights of consumers to pursue private actions under the UTPCPL. Thus, we find the trial court did not err in permitting a private cause of action pursuant to the Dog Provisions of the UTPCPL. Further, we find the exclusive enforcement powers given to the Office of the Attorney General in 73 P.S. § 201–9.3(h) are limited to the civil penalties outlined in 73 P.S. § 201–9.3(h)(2), similar to the remedy in the general provisions of the UTPCPL at 73 P.S. § 201–8.

¶ 20 However, our analysis of Pet City's first issue necessitates relief on its second issue: the propriety of the award of a civil penalty in this case. Due to the inclusion of a civil penalty in this private action, we vacate the judgment and remand for entry of judgment in favor of Appellee for $1138.52: one-half of the purchase price plus counsel fees.

¶ 21 Judgment vacated. Remanded for entry of judgment in the amount of $1138.52. Jurisdiction relinquished.

¶ 22 Justice JOYCE files a dissenting opinion.

DISSENTING OPINION BY JOYCE, J.:

¶ 1 Before determining that a private action may be maintained under 73 P.S. § 201–9.3 (the "Dog provisions") of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"),[2] the majority considered employing the rules of statutory construction that require a court to construe words and phrases according to their common usage.[3] The majority then

---

1. We also note, with interest, that Cavallini did file a complaint with the Consumer Protection Bureau of the Attorney General's office, as discussed above.

2. 73 P.S. §§ 201–1—201–9.3.

3. 1 Pa.C.S.A. § 1903.

**1006**

dismissed that approach, concluding instead that the purpose of UTPCPL would be better served by employing an alternative principle of statutory construction, looking beyond the plain meaning of the words, and attempting to determine legislative intent. Because I believe the majority erred by ignoring the clear and unambiguous language of the Dog provisions, and because the Dog provisions do not authorize a private action, I respectfully dissent and write separately.

¶ 2 "As a general rule courts do not have the power to ignore clear and unambiguous statutory language in pursuit of a statute's alleged or perceived purpose." *Commonwealth, Department of Transportation v. Taylor*, 576 Pa. 622, 628, 841 A.2d 108, 111–12 (2004). As stated by our Supreme Court in the *Taylor* case:

> The Statutory Construction Act directs that, in construing statutory language, "[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage." The Act further provides that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

*Id.* at 628–29, 841 A.2d at 112 (citations omitted).

¶ 3 "[I]t is only when the words of a statute 'are not explicit' that a court may resort to other considerations in order to ascertain legislative intent. Consistently with the [Statutory Construction Act], this Court has repeatedly recognized that rules of construction are to be invoked only when there is an ambiguity." *Gustine Uniontown Associates, Ltd. V. Anthony Crane Rental, Inc.*, —— Pa. ——, ——, 842 A.2d 334, 346–47 (2004) (quoting *Common-*

*wealth, Department of Transportation v. Taylor, supra).*

¶ 4 The language in question in this case is found in 73 P.S. § 201–9.3(h)(1) and directs that "[t]he Office of Attorney General shall enforce the provisions of this section." The question, then, becomes whether "this section" refers to the Dog provisions of § 201–9.3 enacted in 1997 or whether it transcends § 201–9.3 and envelops § 201–9.2, the provisions of which were last amended in 1996.

¶ 5 Throughout the Dog provisions, there are references to "this section" as well as to various "subsections" and "clauses." For instance, in § 201–9.3(c)(4) (*ii*), the statute refers to "subsection (b) of this section." Subsection (b) has three subparts, which the statute refers to as "clauses (1), (2) and (3) of this subsection." If parts (a) through (i) of the Dog provisions are referred to as "subsections," the plain meaning of the words "this section" throughout the Dog provisions is § 201–9.3 in its entirety.

¶ 6 Again, the statute directs that "[t]he Office of Attorney General shall enforce the provisions of this section." 73 P.S. § 201–903(h)(1). The majority concludes that the quoted enforcement provisions are limited to the civil penalties outlined in subsection (h), and in particular clause (h)(2). This interpretation would require us to assign two different meanings to the word "section" within the Dog provisions. There is no authority, or rationale, for doing so.

¶ 7 While, as the majority recognizes, we are charged with interpreting the UTPCPL liberally, we may not ignore the clear and unambiguous language of 73 P.S. § 201–9.3(h)(1) in favor of manufacturing uniform remedies under § 201–9.2 and § 201–9.3. In § 201–9.2, the legislature authorized a private action so that pur-

chasers of personal, family and household goods and services could recover actual losses resulting from unfair trade practices of sellers. In § 201–9.3, the legislature empowered the Attorney General to enforce provisions authorizing certain remedies created solely for the benefit of the purchasers of dogs.

¶ 8 As noted by the majority and by the trial court, Appellee Cavallini did file a complaint with the Consumer Protection Bureau of the Attorney General's office. The Attorney General's office then advised Cavallini that efforts to mediate a settlement had failed and suggested that Cavallini contact an attorney or district justice if he wanted to pursue the matter against Pet City.

¶ 9 It is not clear why the Office of the Attorney General merely attempted to mediate a resolution rather than enforce the directives of the Dog provisions. Nevertheless, that office's failure to act does not empower this Court to ignore the plain language of the statute. Because the clear and unambiguous terms of the Dog provisions preclude a private action, I believe the trial court committed error of law by fabricating a private action under the Dog provisions, and the majority of this Court erred by endorsing that result. I would vacate the judgment and remand for entry of judgment notwithstanding the verdict.