714 A.2d 1012

**Marshall HAMILTON, Jr., Marshall Hamilton and Robin Hamilton, Appellees,**

**v.**

**UNIONVILLE–CHADDS FORD SCHOOL DISTRICT, Appellant.**

Supreme Court of Pennsylvania.

Argued April 27, 1998.

Decided July 21, 1998.

William J. Gallagher, Timothy F. Rayne, John R. Merrick, Kennett Square, for Unioville-Chadds Ford School.

Alan M. Jarvis, Coatesville, for Marshall Hamilton, et al.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

CAPPY, Justice:

This court granted allocatur to determine whether the Unionville–Chadds Ford School District's ("District") "Students Rights and Responsibilities" code ("district code") irreconcilably conflicts with the District's middle school discipline code ("middle school code"). Since we find that the codes do not irreconcilably conflict with each other, we conclude the expulsion of appellee, Marshall Hamilton, Jr., was proper and reverse the decision of the Commonwealth Court.

During the 1994–95 school year, appellee was a student at Charles S. Patton Middle School, which is in the Unionville–Chadds Ford School District. On February 23, 1995, a Sony Discman was stolen from a student's locker. About one month later, appellee admitted to the principal of the middle school that he sold the Discman to a third party on behalf of the thief, with the knowledge that it was stolen. Following this incident, appellee was suspended from school for 10 days. On June 6, 1995, appellee was caught in school with marijuana cigarettes, regular cigarettes, and a lighter and lighter fluid in his possession. Following this incident, appellee was suspended for another 10 day period, which would carry over into the first six days of the following fall semester. In addition, the school administration recommended to the School District Board ("Board") that appellee be expelled "due to repeated level "F" offenses." [1]

---

1. Memo sent to appellees by superintendent of the District on June 14, 1995. The memo merely informed appellees of the expulsion recommendation to the school board and was not the official notification, which was sent August 15, 1995.

On August 15, 1995, the superintendent sent a letter to appellee's parents (also parties to the instant action) advising them that: the administration had recommended appellee's expulsion; a hearing date would be set at a mutually convenient time; and appellees should secure counsel. The letter also enumerated the two incidents (listed above) that provided the bases for the administration's recommendation. In November 1995, the expulsion hearing was held before the Disciplinary Committee of the Board. The Committee issued a recommendation that appellee be permanently expelled. On November 20, 1995 the Board adopted this recommendation. The Court of Common Pleas affirmed.

The Commonwealth Court reversed. The Commonwealth Court held that the middle school code and the district code irreconcilably conflicted with each other and therefore the more specific middle school code governed the more general district code. Moreover, according to the Commonwealth Court, appellee was improperly expelled because the middle school code did not provide any guidelines or list the types of offenses for which expulsion was proper. This court granted allocatur.

Our scope of review of an administrative agency's determination is as follows:

[T]he court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to the practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

2 Pa.C.S.A. § 754(b), in pertinent part.

In the instant case, both parties rely on the Rules of Statutory Construction, 1 Pa.C.S.A. § 1501 *et seq.*, for their respective arguments. The District argues that the district code is in *pari materia* with the middle school code. Appel-

lees contend that the school codes irreconcilably conflict with each other and are not in *pari materia* because they do not apply to the same class of persons. Moreover, according to appellees, the middle school code is more specific because it applies only to middle school students and therefore governs the district code, which applies to all students within the District. Although this court has never used the Rules of Construction for interpreting school disciplinary codes, this court has used the Rules for construing local ordinances.[2] We find that the Rules of Statutory Construction provide instruction for our disposition of the instant case.

The Rules of Construction provide that statutes are in *pari materia* "when they relate to the same persons or things or to the same class of persons or things." 1 Pa.C.S.A. § 1932(a). "Statutes in *pari materia* shall be construed together, if possible, as one statute." 1 Pa.C.S.A. § 1932(b). Moreover, wherever possible effect shall be given to both the general and specific provisions. It is only where the conflict between the provisions is irreconcilable that the specific provision prevails over the general. 1 Pa.C.S.A. § 1933. Thus, it is clear that statutes are to be construed together whenever possible and, unless an irreconcilable conflict exists, effect is to be given to all provisions.

■ In Pennsylvania, local school boards have broad discretion for determining school disciplinary policies.[3] 24 P.S. § 5–510; *see also Girard School District v. Pittenger,* 481 Pa. 91, 392 A.2d 261 (1978)(local school boards have discretion to determine the nature of the discipline to be administered and the conditions under which it will be imposed). Only the local school board is vested with the power to expel a student. 24

**2.** The principles of the Rules of Construction, 1 Pa.C.S.A. § 1901 *et seq.,* apply to the construction of local laws. *Patricca v. Zoning Bd. of Adjustment of the City of Pittsburgh,* 527 Pa. 267, 590 A.2d 744 (1991), *citing Francis v. Corleto,* 418 Pa. 417, 211 A.2d 503 (1965).

**3.** "The board of school directors in any school district may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper ... regarding the conduct and deportment of all pupils attending the public schools in the district...." Public School Code of 1949, 24 P.S. § 5–510.

P.S. § 1318. Pursuant to the Pennsylvania Code the local board of school directors "shall define and publish the types of offenses that would lead to exclusion from school." 22 Pa. Code § 12.6(a). "Exclusion" encompasses both suspension and expulsion. In order to expel a student the board must conduct a prior formal hearing as set forth in § 12.8.[4] 22 Pa.Code § 12.6 (b)(2). Prior to the expulsion hearings the school district must give, *inter alia,* the student and his parents appropriate notice of the charges that are at issue in order to satisfy due process. 22 Pa.Code § 12.8(1)(i).

In the instant case, the middle school code defines expulsion as "exclusion from school for an offense for a period exceeding 10 school days and may result in a permanent expulsion from school," and states that in accordance with statutory requirements a "pupil may only be expelled by the School Board as outlined in the School Code of Pennsylvania." The middle school code does not define the types of offenses for which expulsion is proper. However, the middle school code does define the types of offenses for which suspension is appropriate. The middle school code defines six levels of offenses, A through F, and provides that a student may be suspended for any Level "F" offenses. Level "F" offenses include "possession/use transfer of drugs" and distribution of stolen property. In addition, the introduction to the "Offenses and Disciplinary Action" portion of the middle school code provides that the code is merely a guideline for disciplinary action and that the list of offenses and responses are not all inclusive, thus the administration can "exercise discretion in making judgments regarding behavioral problems not dealt with in the code."

The district code defines expulsion as "exclusion from school by the Board of School Directors for a period exceeding 10 school days and may be permanent." All expulsions require a formal hearing as required by 22 Pa.Code § 12.8(b). The district code enumerates the offenses for which a student may be excluded, which include "the illegal possession, sale, distri-

---

**4.** A duly authorized committee of the board can also conduct the expulsion hearing, as long as the expulsion is approved by a majority vote of the entire board. 22 Pa.Code § 12.8.

bution, or use of drugs ... in school, on school property ... " and theft of personal property.

As stated, the District first contends that the district code and the middle school code are in *pari materia*. Appellees respond that the middle school and district codes are not in *pari materia* because they do not apply to the same class of persons. Section 1932 of the Rules of Construction relating to *pari materia* is written in the disjunctive. Section 1932 provides that the enactment can apply to the same class of persons **or** the same subject matter. In the instant case, both portions of the school codes in question relate to disciplinary procedures, and thus involve the same subject matter. Accordingly, the district code and the middle school code are in *pari materia* and thus can be construed as one code.

The next issue is whether the disciplinary action portions of the codes involved in the instant case irreconcilably conflict with each other such that effect can not be given to both provisions. Appellees assert that the codes are irreconcilable because the maximum punishment for the same offenses is different—the middle school code provides for suspension, whereas the district code provides for expulsion. This court finds no difficulty in construing these two portions of the school codes as complementary. In the instant case, appellee was charged with two Level "F" offenses, and there is no dispute that appellee committed these offenses. The middle school code does not provide any disciplinary action for repeat Level "F" offenders, thus the middle school administration could exercise its discretion, pursuant to the middle school code, in recommending action for behavioral problems not dealt with by the middle school code.

Moreover, it is significant that the power to expel appellee could never be vested in the administration of the middle school, or any other individual school administration, as that power rests solely in the school board pursuant to state law. The district code provides that individual school principals can effect suspension, thus it is only logical that the middle school code only provide for action that can be taken at the middle

school level—limited to the maximum punishment of suspension. In addition, the middle school policy clearly indicates that expulsion is a means of recourse, but refers all matters to the school board. Thus, it is appropriate that the expulsion guidelines are only specifically enumerated in a school district-wide policy, as only the board of the entire school district has the power to expel a student. Accordingly, the school codes are complementary—the district code provides what the middle school code can not—the means to expel a student.

█ Lastly, the District asserts that appellees had actual knowledge of the charges that furnished the bases for appellee's suspension and thus, did not violate appellee's due process rights. Appellees respond that the expulsion was improper, because they did not receive notice of the charges as required by the Pa.Code 12.8(b)(1)(ii) and the district code.[5] The Superintendent of the District sent two identical letters to appellees—one to Marshall Hamilton, Jr. and one to his parents, both dated August 15, 1998. The letters provided that the recommendation for expulsion was related to two incidents and specifically enumerated the facts surrounding the underlying incidents.[6] Thus, appellees' argument that notice was not properly given in violation of due process is without merit. The August 15th letter specifically enumerated the charges that the Board was considering against appellee and thus complied with the due process requirements pursuant to both the Pennsylvania Code and the district code.

Wherefore, this court finds that the school district and middle school codes are in *pari materia* and that proper notice was given to appellee as required by 22 Pennsylvania Code

5. Appellees also assert that the school codes are "void for vagueness." The Commonwealth Court did not address this issue because it reversed the lower court on different grounds. Accordingly, the only way for appellees to raise this claim to this court was via a cross petition. Appellees have not presented a cross petition regarding this issue; thus it will not be addressed in this opinion.

6. The letter also complied with the remaining requirements of 22 Pa.Code § 12.8, appellees merely challenge the notice provision, pursuant to § 12.8(b)(i).

§ 12.8, and thus, appellee's expulsion from school was proper. Accordingly, the Commonwealth Court is reversed.

NEWMAN, J., files a Concurring Opinion.

NEWMAN, Justice, concurring:

I agree with the majority and write separately only to note that the middle school code includes among the list of Level "F" offenses, "[a]ny offense which may be considered [serious] enough to warrant a hearing before the Superintendent and/or School Board." The middle school code's explicit reference to the School Board's power to conduct exclusion hearings unequivocally demonstrates that the middle school code and the district code are complementary elements of a unified disciplinary scheme. Moreover, the reference to the possibility of "a hearing before the ... School Board" belies any contention that Appellee was unaware that his conduct could have disciplinary consequences beyond those specifically enumerated in the middle school code. Thus, I agree that the Commonwealth Court erred in reversing Appellee's expulsion from school.