**Kathleen FLYNN–SCARCELLA,
Parent and Natural Guardian
of Tyler Flynn–Corbin**

**v.**

**POCONO MOUNTAIN SCHOOL
DISTRICT, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 1999.
Decided Jan. 31, 2000.

---

**4.**  To make such a choice would be completely arbitrary, and the administration of justice cannot be arbitrary.

Chad A. Martinez, Stroudsburg, for appellant.

No appearance entered for appellee.

Before DOYLE, President Judge, and COLINS, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

The Pocono Mountain School District (School District) appeals from the June 8, 1999 order of the Court of Common Pleas of Monroe County (trial court) that granted an injunction on behalf of Kathleen Flynn–Scarcella (Scarcella)[1] prohibiting the School District from excluding her son, Tyler Flynn–Corbin (Tyler), from participating in the School District's June 11, 1999 graduation ceremony. For the reasons that follow, we reverse.

During the 1998–1999 school year, Tyler was a senior at Pocono Mountain Senior High School (High School). On Friday, May 21, 1999, the School District held its senior prom at an off-site location. Tyler and three other students were caught in the parking lot of the facility with an open bottle of champagne.[2]

The School District has a policy prohibiting the use, possession, sale, or distribution of alcohol on school premises or at school-sponsored events. (Reproduced Record "R.R." 19–20). Thus, as a result of his possession of alcohol at the prom, Tyler was suspended from school for ten days and excluded from participating in the graduation ceremony.[3]

Thereafter, on June 4, 1999, Scarcella filed a complaint seeking an injunction with the trial court requesting that it enjoin the School District from excluding Tyler from the graduation ceremony. The trial court held a hearing on the matter on June 8, 1999, at which time High School Principal Thomas Chapman and Vice–Principal Robert L. Stofler testified. Both gentlemen testified to the School District's policy on alcohol, the May 12, 1999 graduation letter, the Five–Day Rule, and their effect on Tyler's suspension.

In support of their request for an injunction, Scarcella, Tyler, and Dolores Flynn, Tyler's grandmother, testified. Scarcella and Tyler acknowledged that they had received a copy of the May 12, 1999 graduation letter and a copy of the Student Handbook that outlined the policy on alcohol and the Five–Day Rule. Additionally, Scarcella, Tyler, and his grandmother expressed their feelings on the importance of the graduation ceremony to Tyler's family.

By order dated June 8, 1999, the trial court granted Scarcella's complaint seeking an injunction and directed that the School District allow Tyler to participate in the graduation ceremony. The School District sought reconsideration of the trial

---

1. Scarcella did not participate in this appeal.

2. Tyler and his friends were each charged with the underage purchase, consumption, possession, or transportation of alcohol. *See* Section 6308 of the Crimes Code, 18 Pa.C.S. § 6308.

3. The School District based its decision to prohibit Tyler from participating in the graduation ceremony on its Five–Day Rule and a May 12, 1999 letter to parents and students that outlined the High School's procedure pending graduation, both of which are set forth *infra*.

court's order, which was denied. This appeal followed.

■ We begin by noting that this case is technically moot. Generally, the courts of this Commonwealth may not exercise jurisdiction to decide issues that do not determine the resolution of an actual case or controversy. *Borough of Marcus Hook v. Pennsylvania Municipal Retirement Board*, 720 A.2d 803 (Pa.Cmwlth.1998). Exceptions to this general rule are made "where the conduct complained of is capable of repetition yet likely to evade review, where the case involves issues important to the public interest or where a party will suffer some detriment without the court's decision." *Sierra Club v. Pennsylvania Public Utility Commission*, 702 A.2d 1131, 1134 (Pa.Cmwlth.1997), *aff'd*, 557 Pa. 11, 731 A.2d 133 (1999).

In its opinion, the trial court concluded that the timing of the events led to an unfair result. The trial court noted that if the prom had been held even one day earlier and if Tyler had been suspended the next day, May 21, 1999, Tyler's suspension would not have triggered the Five–Day Rule. The trial court further noted that in light of Tyler's academic record, post-high school plans and family support, it would be inequitable to exclude him from the graduation ceremony.

Given the nature of this case, it is easy to determine that the issue is capable of repetition yet likely to evade review. In *Mifflin County Sch. Dist. v. Stewart*, 94 Pa.Cmwlth. 313, 503 A.2d 1012 (1986), a high school senior was suspended from school and barred from participating in the commencement ceremonies after he was involved in a fight on school property. The student's parents sought to reinstate him in his class and to permit him to graduate with his class. The court of common pleas granted the requested relief and the school district appealed to this Court. In *Mifflin*, we briefly addressed the issue of mootness and determined that the appeal involved an important public question that could otherwise repeatedly escape review.

Year after year, high school seniors are overcome with the excitement of pending graduation. It would be unrealistic to state that the School District's policy on alcohol deters all high school seniors from celebrating with alcohol and that the students are concerned with the timing of their merriment. Thus, even though the School District could potentially be faced with the same problem year after year, the issue would forever evade appellate review because of the close timing of events.

Moreover, we are concerned with the trial court's closing remarks. In its opinion, the trial court stated that "[i]f confronted with similar circumstances in the future, this Court would require the Defendant School District to pay all costs and legal fees incurred by the Plaintiff." (R.R. 11). These remarks indicate that the trial court is warning the School District that if it chooses to impose the penalties for a violation of school policy near commencement in the future, it will pay a costly price should those actions be challenged.

The School District is empowered under Section 510 of the Public School Code of 1949 (School Code)[4] to adopt and enforce such reasonable rules and regulations as it may deem necessary and proper regarding the management of its schools and the conduct and deportment of its pupils. The trial court's language could deter the School District from exercising its right. As citizens, we place a vast amount of responsibility with educators regarding the education and care of our children. To state that a school district can set reasonable rules and regulations but cannot enforce them, would leave school districts without an effective method of resolving and deterring student misconduct.

■ Thus, we conclude that the issue before us is capable of repetition, that it is likely to evade appellate review and that

4. Act of March 10, 1949, P.L. 30, *as amended,*   24 P.S. § 5–510.

the School District's ability to follow its duly adopted rules and regulations regarding student conduct is of great public importance. Accordingly, we will not dismiss the matter as moot.

We will now address the merits of this appeal. The School District maintains that the trial court abused its discretion in substituting its judgment for that of the School District. We agree.

The law is clear that in Pennsylvania, local school boards have broad discretion in determining school disciplinary policies. *Hamilton v. Unionville–Chadds Ford Sch. Dist.*, 552 Pa. 245, 714 A.2d 1012 (1998). Therefore, when one attacks a school board action on matters committed by law to its discretion, he has a heavy burden, as the courts are not prone to interfere unless it is apparent that the school board's actions are arbitrary, capricious, and prejudicial to the public interest. *Commonwealth v. Hall*, 309 Pa.Super. 407, 455 A.2d 674 (1983). In the absence of a gross abuse of discretion, the courts will not second-guess policies of the school board. *Id.*

To reiterate, Section 510 of the School Code, 24 P.S. § 5–510, provides that the board of school directors in any school district may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper, regarding the management of its school affairs and the conduct and deportment of all pupils attending the public schools in the school district. In addition, Section 1318 of the School Code, 24 P.S. § 13–1318, provides that every principal or teacher in charge of a public school may temporarily suspend any pupil on account of disobedience or conduct.

In the present case, the School District based its decision to prohibit Tyler from participating in the graduation ceremony on its Five–Day Rule. The Five–Day Rule, which is set forth in the Student Handbook, provides that:

> [i]t has been the philosophy of Pocono Mountain School District to provide a viable educational program through the last day of scheduled classes. The professional staff has always approached these days with a seriousness of purpose and planned worthwhile educational experiences; therefore, students should be present each day and period during the school day, the last five (5) days of each semester. The following procedure will be followed during the last five (5) days of each semester.
>
> . . .
>
> **Any Senior Suspended** during this time may not be able to meet graduation requirements and might not be permitted to participate in the graduation exercises.

(R.R. 16)(emphasis in the original).

In addition, the High School issued a letter dated May 12, 1999 to parents and seniors that outlined the school's procedure pending graduation. That letter announced the starting date of the Five–Day Rule and stated that any senior suspended out of school from June 1 through June 9, 1999 would not be permitted to participate in the graduation ceremony. (R.R. 23).[5] Tyler testified at the June 8, 1999 hearing before the trial court that he received copies of the Student Handbook and the May 12, 1999 letter and that he was aware of the School District's policies.

In *Burns by and through Burns v. Hitchcock*, 683 A.2d 1322 (Pa.Cmwlth. 1996), several students were suspended for consuming alcohol while on a school-sponsored trip. One student, Valerie Mullane, a senior, was not allowed to participate in her graduation ceremony. Prior to their

---

**5.** Tyler was absent from school on Monday, May 24, 1999 and therefore, his suspension began Wednesday, May 26 and continued through June 9, 1999. Thus, Tyler was suspended during the last five days of the school semester. Per the May 12, 1999 graduation letter and the Five–Day Rule, Tyler was ineligible to participate in the graduation ceremony.

suspensions, the students were afforded an informal hearing under Section 12.8(c) of the Board of Education's regulations, 22 Pa.Code (Code) § 12.8(c). At the request of their parents, the students also appeared before the school board. The school board affirmed the decision of the principal to suspend the students. The students appealed to the court of common pleas, which dismissed their petition.

On appeal to this Court, the students argued that the court of common pleas erred in dismissing their petition because the school board's affirmation of their suspensions was an adjudication under local agency law and that therefore, it must be supported by substantial evidence.

In *Burns,* we noted that Section 12.6(b)(1)(i) of the Code clearly provides that the decision to suspend a student for no more than ten days is within the power of the principal. 22 Pa.Code § 12.6(b)(1)(i). We stated that the school board's act of granting the parents' request for a review was merely a special accommodation to the students and their parents and that it was not an agency determination under local agency law. Because the principal's actions were not shown to violate the short-term procedure of Section 12.6(b)(1)(i) of the Code, the students' argument failed.

 In the case *sub judice,* the trial court stated that "[a]t the first hearing in this matter this Court expressed its reluctance to substitute its judgment for that of the School Administration on matters of school policy. In this case, however, the inequity that would have resulted justifies allowing [Tyler] to graduate, which to him

and his family appeared to be a momentous once in a lifetime event." (R.R. 11). Clearly, the trial court did not conclude that the School District's actions were arbitrary, capricious, or prejudicial to the public interest but rather, that when Tyler was held accountable for his actions, the results were unfair. Thus, we conclude that the trial court erred in substituting its judgment for that of the School District.[6]

Accordingly, the order of the trial court is reversed.

## O R D E R

AND NOW, this 31st day of January, 2000, it is hereby ordered that the order of the Court of Common Pleas of Monroe County, dated June 8, 1999, is reversed.

---

6. We briefly address the School District's argument that the trial court lacked subject-matter jurisdiction. The School District contends that the trial court had no jurisdiction because Section 12.8(c) of the Code (relating to informal hearings and the due process rights afforded to students suspended from school for less than ten days), does not provide any recourse from the school district's decision, whereas Section 12.8(b)(2) of the Code (relating to formal hearings and the due process rights afforded to students expelled or

suspended from school for more than ten days), provides that a student may challenge the school district's disciplinary actions in the appropriate court of the Commonwealth. *See* 22 Pa.Code §§ 12.8(b)(2) and 12.8(c). We agree that the trial court had no appellate jurisdiction in this case. *See Burns.* The trial court may, however, have had jurisdiction as a court of equity due to the lack of an adequate remedy at law. Therefore, we decline to conclude that the trial court had no jurisdiction whatsoever to consider the matter.